UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FERNANDO MENDOZA CRUZ,

          Petitioner,                    Case No. 1:20-cv-503

v.                                       Honorable Hala Y. Jarbou

BRYAN MORRISON,

          Respondent.
_____/

**REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Fernando Mendoza Cruz is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On February 20, 2019, Petitioner pleaded guilty in the St. Joseph County Circuit Court to unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b, and third-degree fleeing and eluding, in violation of Mich. Comp. Laws § 257.602a(3)(a). On March 21, 2019, the court sentenced Petitioner to respective concurrent prison terms of 8 to 15 years and 1 year, 11 months to 5 years.

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court, raising the same grounds he presents in this Court. Those courts denied leave to appeal on November 6, 2019, and April 29, 2020, respectively. (*See* Mich. Ct. App. Order, ECF No. 8-6, PageID.11 ("[L]eave to appeal is denied for lack of merit in the grounds presented."); (Mich. Order, ECF No. 8-7, PageID.180 ("[L]eave to appeal . . . is DENIED, because we are not persuaded that the questions should be reviewed by this Court.").)

On May 29, 2020, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

> I.  PETITIONER MUST BE RESENTENCED WHERE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SCORED 5 POINTS UNDER OV 1 FOR A WEAPON BEING DISPLAYED OR IMPLIED DURING THE SENTENCING OFFENSE OF UNLAWFUL IMPRISONMENT.
>
> II. PETITIONER MUST BE RESENTENCED WHERE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SCORED 10 POINTS UNDER OV 4 FOR SERIOUS PSYCHOLOGICAL INJURY REQUIRING PROFESSIONAL TREATMENT OCCURRING DURING THE SENTENCING OFFENSE OF UNLAWFUL IMPRISONMENT.
>
> III. PETITIONER MUST BE RESENTENCED WHERE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SCORED 50 POINTS RATHER THAN 0 POINTS FOR OV 7 WHERE THE RECORD DID NOT SUPPORT THE ALLEGATION THAT PETITIONER ENGAGED IN AGGRAVATED PHYSICAL ABUSE TOWARD THE VICTIM DURING THE SENTENCING OFFENSE OF UNLAWFUL IMPRISONMENT.

(Pet., ECF No. 1, PageID.18–19.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are not cognizable on habeas review and they are meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

**I.   Factual allegations**

During the plea hearing, Petitioner testified that he had gotten into an argument with his girlfriend, the mother of his three children.  (Plea Tr., ECF No. 8-4, PageID.88.)  He reported that "she got out of the house." (*Id*.)  He took her car, without permission to "go look for her." (*Id*.)  He saw her at a gas station by their house, but she was talking to a police officer, so he just kept going. (*Id*.)

The police officer followed Petitioner, attempting to pull him over. (*Id.*, PageID.89.) Petitioner did not pull over. (*Id.*)

With a little urging from the court, Petitioner acknowledged that he had his girlfriend's three children, ages 5 years, 3 years, and 2 years, in the car with him. (*Id.*, PageID.89–90.) Petitioner did not have custodial rights to the three children; however, he was listed as the father on the birth certificates of the two youngest children. (*Id.*, PageID.90–91.) He admitted that he had no legal right to the oldest child, the child he was accused of unlawfully imprisoning. He also admitted that he did not tell the mother where he took the children. (*Id.*, PageID.94.)

The children's mother described the incident a little differently.[1] Petitioner disapproved of her practice of leaving a light on for the children after they were in bed. Their disagreement led Petitioner to punch her in the mouth, hit her with a curling iron cord, and shove her into a wall. She fled her home to call 911.

She called the police from a gas station. An officer met her there. While they spoke, Petitioner drove by with the mother's vehicle. The mother informed the police that Petitioner had just passed in her vehicle. The police followed and attempted to get Petitioner to pull over. He would not. Petitioner fled at high speeds, as fast as 100 m.p.h. He ran multiple stop signs.

In the meantime, the mother returned to her home to be with her children. She discovered they were not there and surmised that they were with Petitioner in the vehicle. She so informed the police, and they canceled the pursuit, choosing instead to follow at a distance without flashers or sirens.

---

[1] The mother's description of the event is taken from the presentence investigation report which was filed under seal. (ECF No. 11.)

Petitioner called the mother during the incident. He informed her he was looking for something to run the car into to kill everyone in the car. He also told her that he had his gun with him.

The police also spoke with Petitioner on the phone. They encouraged him to pull over so officers could make sure the children were safe and unhurt. Petitioner refused to do so. Petitioner surrendered himself to police the next morning after they surrounded the house where he spent the night with the children.

The children have received counseling since the incident. Petitioner suggests the counseling is necessary because the children must cope with the loss of their father because of his incarceration. The mother reported to the presentence investigator that the children received counseling in the home and that they are still scared to ride in a car and continue to be afraid of the dark.

## II.     AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

(quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner satisfies the heightened requirements of Section 2254(d), or if the petitioner's claim was never "adjudicated on the merits" by a state court—for example, if he

6

procedurally defaulted the claim—AEDPA deference no longer applies. *See Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Offense variable scoring for the sentence guidelines

Petitioner raises three challenges to the trial court's scoring of the offense variables used to determine his minimum sentence range. First, Petitioner complains that the court scored 5 points under offense variable 1 for a weapon being displayed or implied during the sentencing offense. Mich. Comp. Laws § 777.31. The court scored 5 points because, during the incident, Petitioner implied to the mother "that he did have a weapon and was going to use it against the children." (Sentencing Tr., ECF No. 8-5, PageID.100–101.)

Second, Petitioner complains that the trial court scored 10 points under offense variable 4 because a victim suffered serious psychological injury requiring professional treatment. Mich. Comp. Laws § 777.34. Petitioner's counsel, however, did not challenge the scoring of that variable because "the mother was interviewed and the children are seeing a counselor . . . ." (Sentencing Tr., ECF No. 8-5, PageID.102.)

And third, Petitioner complains that the court scored 50 points under offense variable 7 because a victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense. Mich. Comp. Laws § 777.37. The court noted that Petitioner spoke with the mother by telephone during the chase, and "stated he was looking for something to run the car into to kill everyone in the car." (Sentencing Tr., ECF No. 8-5, PageID.103.) The court concluded that Petitioner made his comment about killing the children in the presence of the mother and the children with the intent to further cause fear and anxiety. (*Id.*, PageID.105.)

The court of appeals determined that each of Petitioner's challenges lacked merit. (Mich. Ct. App. Order, ECF No. 8-6, PageID.111.)

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *Lott v. Haas*, No. 17-2462, 2018 WL 2717052, at *1 (6th Cir. Apr. 10, 2018) (concluding that it is beyond reasonable debate that errors in applying sentencing guidelines do not state a claim for federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)). For example, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948).

8

Petitioner attempts to bring his sentence scoring challenges under the umbrella of habeas cognizability by claiming that the court relied upon inaccurate information when scoring the offense variables.

To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *United States v. Polselli,* 747 F.2d 356, 358 (6th Cir. 1984).  In *United States v. Tucker*, the Supreme Court was concerned about the sentencing court's reliance on misinformation where the court gave "explicit attention" to it, "found[ed]" its sentence "at least in part" on it, or gave "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. 443, 444–47.  Petitioner's argument does not approach this standard.

With regard to offense variable 1, Petitioner states:  "The trial court mistakenly believed that Petitioner Cruz told people that he had a gun and that he was going to use it." (Pet., ECF No. 1, PageID.18.)  Petitioner states that never happened, that he loved his children and hugged them when he was arrested.  Yet, the presentence investigation report states that, during the incident, the mother texted Petitioner asking the whereabouts of the gun; he texted back that he had it with him.  (ECF No. 11, PageID.218.)  And according to the report, during the incident Petitioner told the mother on the phone that the gun was with him and the children.  (*Id.*, PageID.219.)  The court found the mother's statement credible.  That Petitioner disagrees does not establish that the mother's statements were false or inaccurate.

As to offense variable 4, Petitioner acknowledges that the children are receiving professional psychological treatment, but he speculates that it could be because they have been deprived of their father by incarceration.  The mother reported that one of the issues being addressed by counseling is the children's fear of riding in a car.  The court's apparent conclusion

9

that this particular psychological injury was caused by Petitioner's crime, not his absence, is eminently reasonable. Petitioner's speculation to the contrary does not suffice to show that the court relied on false or inaccurate information.

Finally, as to offense variable 7, Petitioner does not even address the facts the court relied on to score 50 points for Petitioner's brutality. After subjecting the children to a police chase at triple-digit speeds, he threatened to find something to smash into to kill all of them. The court concluded that behavior warranted the 50-point score. Petitioner counters with a claim that the children eventually fell asleep in the back of the car, that he loved them, and that he made sure they were fed and got some sleep. The facts stated by Petitioner do not demonstrate that the facts relied upon by the court were false or inaccurate.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court). The state court's determinations of the facts used to score offense variables 1, 4, and 7 are reasonable on the record, and the state court of appeals' rejection of Petitioner's claims as meritless is neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated: March 30, 2021                                                          /s/ Sally J. Berens
                                                                                            SALLY J. BERENS
                                                                                            U.S. Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).